Clerk will call the next case. Anders Rydholm v. Experian Information Solutions. Mr. Chami. Good morning, Your Honors. May it please the Court, my name is David Chami and we met just earlier and I represent the appellant, Anders Rydholm. This case, to me, is a lot simpler than the one I argued earlier. We're dealing with the District Court's decision to dismiss plaintiff's complaint at the pleading stage and I want to talk about the credit reporting at issue and the District Court's interpretation of that reporting and the basis for the dismissal and I think the panel already knows that dismissals with prejudice are disfavored in this circuit, especially at the pleading stage. Plaintiff does not, appellant does not take exception with the credit reporting by Wells Fargo and that's because Wells Fargo stopped credit reporting altogether the same month that the plaintiff filed his bankruptcy. That means the information that was contained in the credit report, both TransUnion and Experian's credit reports, was information that existed as of the month of plaintiff's information is what we would, what the industry calls stale because you're looking at a credit report eight or nine months later and what you're reading is information that defendants or appellees claim is helpful, it's current, the account was current, but the account wasn't current, it was stale. It was reporting an $8,000, nearly $8,000 balance as of April of 2019, but the credit report we're looking at is dated November of 2019. It was reporting a monthly payment obligation of $295 that my client did not owe. He didn't, and it's undisputed, Mr. Ridehome did not owe that nearly $8,000 balance. He did not have a monthly payment obligation and Experian wasn't relying on information provided to it by a reliable furnisher. There was no information being furnished to TransUnion or Experian in this case. The information was historical information that was not being updated. What, furthermore, Experian, although I don't think in this case it would have mattered, Experian was also reporting the filing of a bankruptcy, so the petition was filed, but they weren't reporting the discharge of that bankruptcy which occurred 90 days later, but the complaint makes very clear that what was being reported by Experian was not only the filing of the bankruptcy, but every other account that predated the bankruptcy other than the Wells Fargo account was reporting as discharged in bankruptcy, so Experian had direct knowledge, actual knowledge, that the But Experian left that information off the credit report, left the fact that a discharge had occurred in the public record section off the credit report, and the district court, for some reason, latched on to the fact that we mistakenly grouped the two. We said that they had noticed based on the accounts being reported as discharged, but we also said that Experian reported the discharge, and the court said, well, I see here that they didn't report the discharge, so no case. Well, the court ignored the second part of that paragraph of the complaint, which said they had actual notice not only from the public record filing, but also from the fact that every other account was reporting in bankruptcy. Experian knew that the bankruptcy was filed, they knew that every other account was reported as discharged, yet they ignored it, and the truth is, had they even reported the discharge in the public record section, Experian sort of already told you about They weren't going to update it anyway unless it was reporting as 120 days late, so that account would have sat there indefinitely with an $8,000 balance and a monthly payment, and Mr. Rears will confirm that, ask him, he'll confirm it, that's their policy, it's their policy today, that current accounts will continue and remain on the credit report. The problem with that is you're not balance, and that's what they do. The credit report says balance on TransUnion or recent balance on Experian, and then tells you some date in the past. No updated information was being reported. How does the credit agency, in your view, supposed to know if an account that was current as of the date of filing the bankruptcy was discharged? Because we all know there are exceptions to discharges, there's reaffirmation agreements, I mean, it could still be a valid account. Right, and nobody's taking the position that Experian needs to predict reaffirmation agreements. Reaffirmation agreements are the exception to discharge, are an exception to discharge. It has to happen before the discharge. Reaffirmation agreements are entered beforehand, and that information should be reported to Experian or TransUnion by the furnisher when it occurs. But otherwise, when they entered into the 2008 settlement agreement, they went into that and learned and understood, I suspect they knew long before the settlement agreement, that there are presumptions. Experian is a credit reporting agency. They actively pursue public record information, civil judgments, bankruptcies. They want this information, they want to report it. So if you're going to report it, you have to understand it, and they do, and they entered into the agreement before the bankruptcy. The presumption is they are discharged unless they fall into an exception, and we've talked about this in our briefing. Those exceptions are enumerated, child support, alimony, student loans, nothing about car loans, mortgages, credit cards, lines of credit. Those things are presumed discharge. Now, one might ask, well, could they have reaffirmed? Is that, a possibility? The fact that Wells Fargo wasn't reporting anything is a problem. They weren't reporting May, June, July, August, September, October, November. They ceased reporting altogether. It's a common problem. It's something that furnishers do. There's a bankruptcy, and sometimes they just stop reporting because they know that the debt is no longer owed, and Experian and TransUnion simply latch on to that information. They leave it on the credit report, and it'll stay there indefinitely unless a consumer disputes it, and they say it's helpful. Well, it's good credit. That's, that's literally contradictory to what their own, their own information says publicly, what they tell the public, and what they sell to creditors, and we cited in our briefing. We asked the court to take judicial notice of Experian's website that says, hey creditors, we don't know the income of these consumers, but you could learn a lot about credit, about consumers by looking at their credit reports, not just their credit score, but how much debt they owe, what their monthly payment obligations are. So accuracy, and this is, talk about the word derogatory, and I think the district court, and in fact the district court in the order said, I looked up derogatory, and here's what it means. That's a very narrow approach to, to construing that paragraph, because derogatory doesn't mean necessarily what the Webster's Dictionary or Oxford Dictionary might say in the terms of information, or potentially harmful information, and the credit reporting agencies know that a consumer's debt, outstanding debt and monthly payment obligations, is valuable information to prospective creditors. It tells you how much money you should loan to somebody. It also, in an account like this, they look at the available credit to a consumer, and post-bankruptcy consumers don't have a lot of available credit, so credit utilization is a factor. So while it may not be, negatively impacting Mr. Ridholm, Mr. Ridholm's credit score, it is impacting his ability to obtain credit, and what's important here at this, at this stage of the case, is we've pled credit denials, we've pled at adverse unfavorable credit rate, credit rates, we've pled emotional distress, but the court again said, well this is positive, accepting the credit, the defendants, the appellee's position that, oh this is not harmful information, and then looked at our complaint and said, well you said derogatory, and here's what derogatory means, and he dismissed the case with prejudice, despite the fact that we alleged harm as a result of this credit reporting. At a minimum, the court should have, as the circuit requires, granted or dismissed it without prejudice, but I don't even think that was necessary. I think the dismissal itself was looking at the, the pleadings, because we alleged knowledge of the discharge, defendants, or appellees, knowledge of and familiarity with white that they entered into the settlement agreement, and their knowledge of what a bankruptcy does to debts that were incurred prior to, to the filing of the bankruptcy, gives them not only constructive knowledge, but they have actual knowledge of the of that bankruptcy filing. Now they argue substantially in their briefing, and TransUnion just adopted or sort of adopted the brief by Experian, that they also were following white, and I'll address that here at this point. That's absolutely false. Both the Ninth Circuit's Wheeler and Hernandez decisions involved similar claims, where you had an account that was a year or so old, quote-unquote current, but not being updated. They're stale accounts. Those accounts are not covered by white. White, first of all, white never discusses what the credit reporting agencies have to do as it relates to balances at all. It's only about whether they have to code them as included in bankruptcy or not, but, and we cite this in our briefs as well, the FTC's prior guidance that says you got to report the account you can, but you can't report balances, and white does not discuss what to do with accounts that are not being updated. The court never considered, the parties in white never considered accounts that are stale, accounts that are historically accurate, but no longer accurate as of the day of the current credit report, reports that are no longer accurately reflecting what is owed as of the date of the credit report. So saying that Mr. is materially misleading because he doesn't owe that today, and the report doesn't tell you what he does owe today. It doesn't tell you whether he's making payments on the account. It doesn't tell you anything other than some historical information, and also, ultimately, that represents to a creditor that this balance is at least outstanding, maybe greater was owed, maybe less, but that there's a monthly payment, and nowhere in white, and I challenge Mr. Wears or Mr. Johnson to get up and point the court to any provision in white that says accounts that are current, but not updated, are stale, are also included as a current account. I'll reserve the remainder of my time. Thank you. Thank you. Mr. Wears. Good afternoon, Your Honors. Again, Adam Wears on behalf of the Pelley Experian. Just heard a lot from Mr. Chammy about things that are not pleaded in this complaint. This is a very short, bare-bones complaint. I didn't see anything about stale accounts. I didn't see about most of the things he just got up here and talked about. The fact of the matter is, he didn't plead a claim under the FCRA, and he has not pled Article III standing. Plaintiff alleges that he filed for Chapter 7 bankruptcy. At the time he filed, he had an account with Wells Fargo that was current. After he received his discharge, both Experian and agreed. It reported in the section of his report that includes accounts in good standing, the types of accounts we all strive for. Mr. Chammy, I heard him talk about how derogatory is a term of art in the industry. Well, let me tell you. Experian's credit report, which is in the appendix at page 33, reported his account in the positive payment section, and it describes it thusly. It's an account that has a positive payment history, meaning there are no delinquencies or derogatory statuses that are reported. For reasons that frankly don't make a lot of sense, plaintiff says that he preferred this current account in good standing to report in the section reserved for derogatory accounts. He wanted it to be a major derogatory discharge in bankruptcy. And he goes on to make a sort of conclusory allegation that the failure to report this as a major derogatory caused him to somehow sustain damage, including the loss of credit opportunities, denials, and favorable credit terms. He provides and emotional distress and embarrassment. He provides no further detail about these supposed damages, nor does he allege that he was troubled enough by them to contact any of the bureaus to correct this reporting. Instead, he sues, essentially asking this court to find strict liability. Wells Fargo account was wrong, therefore liability. That's not how the FCRA works. I want to talk about standing first. Plaintiff has not plausibly alleged that the reporting of this current paid-as-agreed account has injured him and he therefore lacks standing. Since we submitted our briefs, there's been a lot of activity in the Supreme Court and the Eighth Circuit, so a lot of what I'm going to talk about is in the supplemental materials. But the Supreme Court, a few years ago in Spokio, the Supreme Court made clear that not all inaccuracies in credit reports create intangible harm or injury. That was refined in TransUnion v. Ramirez in the context of a credit report that erroneously labeled someone a terrorist who was not one. The Supreme Court compared this to the common law claim of defamation. Someone's injured when there's a statement that would subject him to hatred, contempt, or ridicule is published to a third party. This in contrast to Spokio's earlier holding that the mere publication of something that's false but not defamatory is not enough for standing. Here the question is straightforward. Since the reporting is not defamatory at all, instead it is complementary. Plaintiff paid this loan as agreed. He paid it on time. There is nothing negative about that whatsoever. Unlike in Ramirez where the reporting erroneously labeled the plaintiff as a terrorist, there is certainly no basis under the common law tradition to conclude that this complementary reporting caused an intangible injury. Well the argument they're advancing is really a credit utilization problem and why is that not a real allegation? A few things. First, that's not pleaded. That is not in the pleadings. Secondly, I would point your honors to another case we submitted as supplemental authority, Stagger v. Experian from the Northern District of Illinois, 2022 Westlaw 632838. Very similar case. The court there said an open never late reporting is not in any way defamatory. And then went on to address these arguments about the plaintiff alleged there about debt to income ratio and things like that. And said look, the debt to income ratio, your honors, is something that is only calculated sometimes and rarely. When you apply for most loans, debt to income ratio is not calculated. It's mortgages, if you go buy a Ferrari. Plaintiff has not alleged that his debt to income ratio was calculated by anyone. He hasn't alleged anything. All his brief alleges is that there is some risk of future harm. Someone may have calculated my debt to income ratio and that may have hypothetically injured me. Ramirez scotched that notion. Risk of harm in an FCRA case for damages is not enough. Ramirez says that unambiguously. That ends that line of attack. But in addition, what plaintiff's complaint certainly lacks is any kind of factual enhancements. That is what the Eighth Circuit has said is needed. The Our case found in an FCRA case, no standing, where there were simply conclusory allegations about harm to reputation and things like that. You need specific factual enhancements in the pleadings. There were none there. Recently, last week, in the Schumacher case authored by your honor Judge Erickson, similarly there, dismissed a case for Article III standing where there were no specific facts pled supporting concrete harm. If plaintiff was denied credit, as he sort of conclusively alleges, he needs to say that it was as a result of this positive Wells Fargo account. He doesn't do that. He just says he was denied credit. Well, the Jarrus case from the Ninth Circuit makes clear that's unsurprising because he filed bankruptcy. A plaintiff who filed bankruptcy, yes, undoubtedly will get credit denials. But he needs to allege with specific factual enhancements that in specific facts that it was caused by this alleged error. I want to talk about, so he then tries to argue the debt to income ratio. And the last thing plaintiff Haynes has had on the briefing is emotional distress. Again, I would point your honors to a recent in the string of cases from the Seventh Circuit, they call it a bevy of recent decisions. We've got a Wadsworth 12 F 4th 665, to your honors, which says emotional distress is not enough for actual injury where there's just bare conclusive reallegations, which is what we have here. The Eighth Circuit joined in that in a recent case called Ojogwu 26 F 4th 457, where they cited this bevy of Seventh Circuit cases. And they say, nor does stress by itself without physical manifestations and qualified medical diagnosis amount to a concrete harm. Where is that alleged in this complaint? He alleges that he was upset by a positive Wells Fargo account. Not only do you need to not check your common sense at the door, that is not the kind of thing that would be typically upsetting, he doesn't have any kind of factual enhancements, which the Eighth Circuit requires. The other thing Ojogwu said that is relevant here is there, the accident was complained about, they sent a collection letter to someone they shouldn't have, was actually beneficial. Far from creating harm, it was beneficial. Here, the Wells Fargo current account, I can assure you it's not in the evidence here, but that's helping his credit. The implausibility of the notion of standing here is clear on its face and it's a violation of, and clear under Eighth Circuit law and the recent Ramirez decision. Plaintiff lacks standing and it should be dismissed. Finally, these procedures that it's clear from the pleadings that there can be no plausible negligent violation here. This was a current account. The white order tells the bureaus not to update current accounts. That's what happened here. There's no plausible allegation of negligence. This is not the same as the Ninth Circuit case that resulted in some factual anomalies, collection accounts, accounts that were super old. This account was not old. This was not stale. This was a couple months. The vast majority of consumers want current accounts on their files. They don't want the bureaus to just delete them because they haven't been updated in two months. That's frankly, again, you don't check your common sense at the door. So under white, this is what we were supposed to do. In addition, the Sarver case from the Seventh Circuit, which I suggest your honors read carefully, further illustrates that a CRA cannot be liable for violating 1681EB, which is the only claim at issue here, unless it had some notice that the furniture was unreliable or some other notice that the reporting was wrong. Well, here, Wells Fargo is clearly not unreliable. They're sending data to us and there's nothing alleged here that would give us any reason to think the plaintiff was not in fact current on this loan and that the reporting was inaccurate. I see my time is up, your honors. Ms. Demetrius, when the lectern is cleaned, you may proceed. Good morning, your honors. May it please the court, I'm Camille Nicodemus. You can lower that podium. There's a button there. Maybe I'll just lower this. The podium itself will go down. Okay. That's better. Thank you, your honor. May it please the court, I'm Camille Nicodemus representing Appley TransUnion. The crux of this case is whether credit reporting agencies TransUnion and Experian used objectively reasonable procedures to show maximum possible accuracy. Under a scenario where number one, the plaintiff has not notified TransUnion that a particular Wells Fargo account was discharged in bankruptcy, number two, Wells Fargo did not notify the credit reporting agencies of the same, and number three, the Fair Credit Reporting Act and case law have made it clear that credit reporting agencies do not need to scour bankruptcy records to determine the status of such accounts. In the absence of specific information, when a consumer has were included and discharged in the consumer's bankruptcy and non-derogatory accounts were not. Appellate's counsel has used the term current several times, and just to clarify, this account was current, non-derogatory. If you look at the credit reports that were in the appendix and TransUnion's was at page 51, there are two sections in the credit report. There are satisfactory accounts and there are adverse accounts. And then separately, there are public records, and in this case, there was a public record filing of bankruptcy. So the consumer's bankruptcy and non-derogatory accounts, I'm sorry, one second. So in the absence of specific information, TransUnion presumes that the derogatory accounts were included in the bankruptcy and non-derogatory accounts were not, unless and until it learns otherwise from either the consumer or the creditor, who are the parties with direct knowledge of what happened with this particular account. Now the result of this procedure, which is intended to comply with the FCRA's maximum possible accurate provision, is that plaintiff gains the benefit of discharging derogatory accounts and the protections of bankruptcy, which is what that law provides, but they also get the benefit of positive accounts for those that are reporting as current or satisfactory. Now if the credit reporting agency is presumed, as plaintiff argues, that all accounts that predate the discharge of the bankruptcy, whether they are positive, satisfactory current accounts or derogatory accounts, should be marked automatically as included in the bankruptcy, this will not result in maximum possible accuracy. In fact, this will harm consumers who have, as many do, kept certain positive accounts in order to help rebuild their credit after the bankruptcy has been discharged. Some of those... Your argument may very well be valid, but aren't these the kinds of things that we have to, what, we're here on a motion for dismiss. We don't have any evidentiary record that backs up anything that you're saying. Don't we have to, don't we have to get some evidence on this? No, actually we don't because there's no dispute about what the procedure is. It's a very simple, straightforward analysis that the credit reporting agencies enter into once the bankruptcy has been discharged. Instead of waiting to get all this information in from the various creditors and from the many tens of thousands of consumers who file bankruptcy every year, the credit reporting agencies enter into an assessment and they make, without naming specifically, they say, look, if this account is current and satisfactory, then it does not get marked as included in bankruptcy. Just imagine if all of the accounts that predated the bankruptcy were suddenly marked as included in bankruptcy when many, many consumers don't want that. They've done something else to these accounts. What a burden on the system that would be. The plaintiffs would then have to come to the credit reporting agencies and say, wait a minute, wait a minute. This was a current account. You've put it in the adverse box. You've marked it as included in bankruptcy. I did not discharge it in my bankruptcy. Please fix it. There would be harm to those consumers between the time that was done and when they actually corrected it. And a parent here is asking those consumers to do what he himself did not bother to do, which is contact the credit reporting agencies and say, this one was wrong. You got it wrong on this one. You need to move it into the derogatory because I discharged this in bankruptcy. He did not do that, but he expects that it would be a logical and reasonable procedure for the credit reporting agencies to cause that kind of chaos and harm. This is a reasonable procedures case where, let's say, the consumer disputed and we have to find out what did they tell the CRAs? What did the CRAs do? What did the CRAs say to the creditor? What did the CRAs say? This might be a situation where you have to delve into the procedure. This is a reasonable procedure case where we know exactly what happened and why. And we know that it was, that it's a judgment made in order to ensure maximum possible accuracy and I would add, minimize harm to consumers because we're only keeping those positive accounts. The fact that it complies with white is, white doesn't have to be controlling here, but it's indicative of the fact that it was a well thought out process. And as Mr. Rios pointed out in the other case, it has worked extremely well for a very long period of time. This is a reasonable procedure because it's based in logic. It minimizes error. Yes, there will be error, but this is not a strict liability statute. We know that when they make this distinction, some of them will be wrong. And the statute provides a remedy for that. Contact us. Your time has expired. Oh, I'm terribly sorry. I'm so sorry. I apologize. Any questions? Thank you. Thank you, Your Honors. Mr. Chami. Thank you, Your Honor. I'm going to go in reverse order because something counsel just said interested me. I heard her say that if we report, and what she meant to say is if we report accurately that accounts are discharged in bankruptcy, people will be mad because they're still paying them. There are plenty of cases where consumers have sued because accounts were reporting as included in bankruptcy because they were discharged. And courts have rejected consumers' claims that just because you've chosen to voluntarily pay a debt, that doesn't mean you get the benefit of the inaccurate reporting of those on-time payments because it's inaccurate because the debt was, in fact, discharged. Experian would argue the exact same thing here today if Mr. Ridehom was saying, but I'm making payments and I want those to be reporting. They'd say, well, you're not entitled to that because your debt was discharged. That is the law. So what plaintiff is advocating for is that Experian and TransUnion and all the bureaus follow the law. In fact, in a scenario like counsel described, if a consumer chose to voluntarily pay the debt, that has no impact on the discharge. In fact, if they had reaffirmed, you would expect the furnisher to tell the CRA there was a reaffirmation agreement. Now, reaffirmation agreements don't happen with unsecured debts, and in many cases, that's not even a consideration for the bureaus to consider. But in this particular case, Wells Fargo wasn't giving them any information. That in and of itself combined with the discharge and the other information being reported was enough to place them on notice. And the bureaus keep trying to make EB include a dispute requirement, but everybody acknowledges there is no dispute requirement under EB. There's just a requirement that they have a reason to know. They entered into a settlement agreement acknowledging in 2008 that they understand pre-bankruptcy debts are included in bankruptcy. I asked and I challenged counsel to get up here and explain to this court where in the white order does it say these stale accounts not being updated are covered. They just said a generic statement, but nowhere could they point to a you can make a presumption that they were not included in bankruptcy. The idea that, and I don't think Mr. Weir was testifying what consumers would want, but this is a motion to dismiss. There's no evidence of what consumers would want. There's no evidence that consumers who already have a bankruptcy reporting on their credit report, they already have the impact of the bankruptcy. The bankruptcy itself is what hurts the credit report. One additional trade line and a number of trade lines being included does not cause harm, but really that's a case for discovery. That's an expert issue. What is the harm? Did somebody consider Mr. Ride Home's debt to income ratio? Well, typically when you apply for credit and we alleged he applied for credit and was denied, when you apply for credit, you give them how much money you make. You give them permission to pull your credit reports and both those credit reports, both transunions and experience, were accessed by creditors. So it's not some speculation that somebody may have considered his debt to income ratio. The presumption would be that if they pulled his credit reports and he applied for credit and gave his income, that they did consider his debt to income ratio. So we ask for your remand, Your Honor. Thank you. I want to thank you for your briefing and argument. The court finds it very helpful. Is that the end of the court's calendar for this morning? Yes, Your Honor. We'll stand in recess until tomorrow morning at 9 a.m. Thank you very much.